### CITY OF AUSTIN v. AMELIA HALL ET AL.

#### No. 903. Decided June 7, 1900.

**1.  Road—Prescription—Persons Under Disability—Burden of Proof.**

To establish a prescriptive right to a public road, in an action for interference therewith by another than the owner of the servient estate, plaintiff must prove that, during the prescriptive period, the various tracts of land against which the prescriptive right is claimed were owned by persons free from legal disability and against whom limitation or prescriptive right could be acquired by adverse use. (P. 596.)

**2. · Same—Decision Limited.**

It is not intended to decide by this ruling what would be the rule if the prescriptive right was claimed against the defendant in the suit or some person whose title he asserts. (Pp. 596, 597.)

**3.  Navigable Stream—Statute Construed.**

Article 4147, Revised Statutes, gives to the streams described therein the character of navigable streams, and a grant made upon a stream declared by the statute to be navigable would confer title only to the same extent as if the stream were navigable under the general definition given to such water courses. (Pp. 597, 598.)

**4.  Same—Stream Navigable by Statute—Rights of Riparian Locator.**

The grant of a tract of land upon the margin of a stream which retains an average width of thirty feet gives title to the grantee only to the water line of such stream, the title to the bed of the stream being reserved to the State and subject to its control. (P. 597.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from Travis County. This case, upon a previous appeal, is reported as Hall v. City of Austin, 20 Texas Civil Appeals, 59.

*V. L. Brooks,* for appellant.—The verdict and judgment are without competent evidence to support them, because the burden was upon plaintiff to show affirmatively that the land over which the road and ford extended and each and every tract or parcel of said land, was owned, for the whole period of prescription, by a person or persons against whom the doctrine of prescriptive grants can be legally applied; and no such evidence can be found in the record in this case. Saunders v. Simpson, 37 S. W. Rep., 195; 2 Washb. Real Prop., 4 ed., 302; Washb. on Easements, 3 ed., 163; Keys v. Mason, 44 Texas, 142; Melvin v. Whiting, 13 Pick., 188; Watkins v. Peck, 13 N. H., 377; Woodworth v. Raymond, 51 Conn., 77; Yard v. Ford, 2 Wm. Saund., 172; Goodman v. Saltash, L. R. 7 App. C., 633; Ferrell v. Ferrell, 1 Bax., 332; Daniel v. North, 11 East., 372: Barker v. Richardson, 4 B. & A., 579.

The plaintiff's evidence fails to make a case for the jury on the issue of damages for the destruction of the ford and roadway, and the court

erred in submitting said issue to the jury because the burden of proof is on one claiming an easement by prescriptive right, arising from user for the prescriptive period, to show that during all of such period the servient estate or estates against which the prescriptive right is claimed was or were owned by a person or persons free from legal disability and against whom prescriptive right could be acquired by adverse user. There was no attempt to make such a showing in this case, or even to show the various tracts of land over which said road ran, or who the owners of such tracts were; and the insufficiency of the evidence in that respect was distinctly called to the trial court's attention in defendant's motion for a new trial.

The court erred in refusing to give the jury special charge number 3 requested by the defendant, which was as follows, to wit: "You are instructed that the undisputed evidence in this case shows that the Colorado River, at and about the location of the ford alleged to have been destroyed, was and is a public navigable stream, and that no prescriptive right could for this reason be acquired by plaintiff to use said ford across same." Rev. Stats., art. 4147; Tomlin v. Railway, 32 Ia., 109; Flanagan v. Philadelphia, 42 Pa. St., 219; McKeen v. Del. Div., 49 Pa. St., 440; Angell on Highways, sec. 56; Elder v. Burrus, 6 Hump., (Tenn.), 358; Lowber v. Wells, 13 How. Pr., 454; People v. Commrs., 33 N. Y., 461; McManus v. Carmichael, 3 Ia., 1.

Under the surveying laws of Texas, private ownership of lands fronting streams navigable under the surveying laws extends only to the water's edge, and not to the thread of the stream as at common law. City v. Schott, 29 S. W. Rep., 681; Murphy v. Copeland, 51 Ia., 515; Halsey v. McCormick, 13 N. Y., 296; Starr v. Child, 5 Denio, 599.

*John Dowell*, for appellees.—Discussing the question without reference to this act of the Legislature authorizing the destruction of the ford and with it the road, and looking to appellee's right independent of this section, we still think that on the doctrine of prescription they have in this road such rights as could not be taken from them under the Constitution of the State, without first paying them the damages done, in that they had an easement by prescription in this public road. Easements are acquired by prescription. The possession or use necessary to confer a title by prescription must be long, continuous, peaceable, open, by the knowledge and tacit consent and without the express permission of the true owner. Powell v. Bagg, 8 Gray, 441; Parker v. Foote, 19 Wend., 309; Wheeler v. Clark, 58 N. Y., 267; Campbell v. West, 44 Cal., 646.

It is also held that to constitute an easement by prescription it is not essential that the user should have been with the actual knowledge of the owner of the servient tenement, where the user has been for the requisite time, open, notorious, visible, uninterrupted, undisputed, and under a claim of right, adverse to such owner, who is charged with notice, and his acquiescence. Ward v. Warren, 82 N. Y., 265; Reimer v. Stu-

ber, 20 Pa. St., 458; 6 Lawson's Rights, Rem., and Prac., sec. 2776; Lawson's Usages and Customs, chap. 1.

That a road by prescription can be had in a ford across a river where the grants to land run down to the water's edge has been decided in the following cases: City of Laredo v. Martin, 52 Texas, 548; Compton v. Waco Bridge Co., 62 Texas, 715.

A road that has been used twelve to fifteen years in nearly the same place by the public, creates a public road by prescription against the owner, and you are not required to go on and show that there was no exception to this rule,—this is for the party against whom it is asserted to do,—this fact being proven alone establishes the easement. Click v. Lamar County, 79 Texas, 124; Hamilton County v. Garrett, 62 Texas, 609; Vogt v. Bexar County, 5 Texas Civ. App., 272; City of Laredo v. Martin, 52 Texas, 548; Compton v. Waco Bridge Co., 62 Texas, 715.

A party relying upon an exception to the statute of prescription must specially plead and prove it, or in other words, when the appellees Hall had plead and proved that they used and occupied this road the requisite length of time by prescription to give them a right to it, if there was any exception to this rule, that is, disabilities of parties against whom the prescription would not run, appellant should have plead and proved it. Hughes v. Lane, 25 Texas, 356; Cook v. Lindsay, 57 Texas, 67; Riggs v. Hanrick, 59 Texas, 572; Coles v. Kelsey, 2 Texas, 547; Dickinson v. Lott, 29 Texas, 173.

The question as to whether or not the Colorado River was a navigable stream and the title was in the State is in our judgment in this case immaterial, because the act of the Legislature which authorized the city to construct the dam required them to pay all damage that was done to property owners in and out of the city by reason of the construction of said dam. Besides, we have seen that a public road can be had by prescription over the Rio Grande River (City of Laredo v. Martin, 52 Texas, 548) and over the Brazos River (Compton v. Waco Bridge Co., 62 Texas, 715). Section 57, subdivision 46, of the act authorizing the construction of the dam is as follows: "No property shall be taken, overflowed with water, or otherwise damaged, by the city, within or without the limits, for such purpose, without the consent of the owner thereof, except by due process of law, and upon making adequate compensation for the property so taken, damaged and overflowed." Special Laws of Texas, 22d Leg., p. 112. If it be conceded that the title to the river bed and the ford was in the State of Texas, and that the State would have a right to use the property itself or have it used by others as it saw fit, irrespective of damages to other people, yet such in this case was not done, as is seen by the act above stated. The State expressly authorized the city to build the dam on the condition that they would first pay the damage that was done, and the city having accepted and acted on it, would be bound by it, and therefore it occurs to us that under this section of the law authorizing the construction of the dam,

the city would be bound to pay these damages unquestionably, conceding the title to the ford and river bed in the State, and that it was a navigable stream.

The State has a right to grant a franchise for a ferry across a river and by the same authority it would have a right to authorize the construction of a dam, and if it required the parties to whom it grants this right to pay all damages of its construction, that would be sufficient and would authorize the appellees to recover. This was expressly decided in the case of Tugwell v. Eagle Pass Ferry Co., 74 Texas, 480. It has also been decided in Selman v. Wolfe, 27 Texas, 70, that navigable streams within the State are public highways and subject to the control of the Legislature, which may, when the public interest will be promoted, obstruct the same. In that case the Legislature authorized certain parties to bridge the Angelina River, but did not require them to pay any damages by the special act authorizing such. In this case the act specially requires them to pay the damages. In Jones v. Keith, 37 Texas, 400, it has been held that a bridge is a part of a highway, and certainly by this reasoning a ford would be held a part of a highway.

Article 4147, in reference to surveys on navigable streams, urged by appellant, wherein it states that all streams so far as they retain an average width of thirty feet shall be considered as navigable streams within the meaning of location of land certificates, in that the lines of the survey shall not cross the river, is held in Horton v. Pace, 9 Texas, 81, to be merely directory, and would not injuriously affect even a survey which did not strictly pursue its directions, and does not apply to the question in issue in this case, but has reference solely to the location of lands.

It is believed that a public highway may be established over land of the State by prescription, to such an extent that the same can not grant the land to another party and relieve the land of this public road. All public roads by prescription are based on the pre-existence of a grant, and the State being capable of making a grant, it is conceded that prescription would run against it. The only limitation as to parties against whom prescription will not run for the purpose of establishing a public road is, persons incapable of making a grant, such as married women, minors, or insane persons. And this is expressly stated by Elliot on Roads and Streets, page 138, where he uses the following language: "In accordance with the rule that prescription presupposes a grant, it has been held that the public can not acquire the right to a highway by prescription as against married women, minors, or insane persons;" and in this nothing is said about not acquiring against the State.

A public road being a public right and function for traveling exercised by the State to give better ways of travel, and belonging to the State, it is not seen why such a thing could not be acquired over the land of the State itself as well as over the land of private parties, it being a right asserted by the State or by the general public for the State; and this being true, we can not see why it is that the ford across the Colo-

rado River would not by prescription become a part of the public highway, and appellees would have a vested right in it to travel it, even if the title to the river bed was in the State.

Public roads are established upon the doctrine of necessity; the general public are entitled to highways, modes of travel through and over the body of the State itself, and if the State goes on and uses its own land by and through the general public as a public road for the requisite length of time it is a good dedication by the State, and the State can not grant the land over which the road runs to a private individual so as to deprive the general public of their right to this road.

This dam being constructed by law, it is not known to what extent the court will take judicial knowledge of the dam having been washed away since the filing and trial of this case, and in fact we can not see what this has to do with the questions certified to this court for its answer. However, if the court takes judicial knowledge of the washing away of the dam and the river returning back to its former bed, we wish it also to take judicial knowledge that the ford is entirely destroyed on account of the construction of the dam and the deposit of mud that has been left there, and its destruction is permanent and it can not again be used as a ford, and the injuries of appellees are the same as if the dam still remained there.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the following statement and questions:

"Appellee, Amelia Hall, joined pro forma by her husband, brought this suit to recover damages from the city of Austin, alleged to have been sustained by her as the owner of a tract of land with improvements, constituting the homestead of herself and husband, and located west of the Colorado River, near the city of Austin.

"In the main, the plaintiff's case is based upon the theory that the construction and maintenance by the city of a certain dam across the Colorado River has destroyed a certain roadway leading from the plaintiffs' land to the city and constituting plaintiffs' shortest and best roadway to and from the city.

"It was not shown that the land over which the road runs had ever been condemned in the manner prescribed by statute or donated by the owners thereof for a public road; and the plaintiffs sought to establish the fact that it was a public road by prescription, resulting from long continued use by the public. The road extended across various tracts of land and also crossed the Colorado River. As to some of these tracts, the evidence does not show who were the owners during the prescriptive period, and it does not show whether any of the owners were sui juris during the time referred to. In fact, there was no direct proof that the title to the tracts of land referred to had ever passed out of the State. Furthermore, testimony was submitted showing that the Colorado River, at and about the point where the road crossed, was of an average width

of more than thirty feet before the building of the dam, and that the lines of surveys fronting thereon do not cross the river.

"With the foregoing statement and explanation, the Court of Civil Appeals certifies to the Supreme Court for decision the following questions which are material to the rights of the parties and are presented in appellant's brief:

"1. In order for the plaintiffs to establish a prescriptive right to the road, was it necessary to show that during the prescriptive period the servient estates, the various tracts of land against which the prescriptive right is claimed, were owned by persons free from legal disability and against whom limitation or prescriptive right could be acquired by adverse use?

"2. Under the facts stated, conceding that the land on each side of the river where the road crossed it had been granted by the State to individuals, did the title to the channel of the river remain in the State, so that no prescriptive right to the use thereof as a public road could be acquired by the plaintiffs? In other words, is a stream navigable within the purview of article 4147 of the Revised Statutes because it is of an average width of thirty feet, a navigable stream in the sense that abutting owners acquire title to the water-mark only and title to the channel of the stream remains in the government?"

To the first question we reply in the affirmative.

To the second question, we answer: Article 4147, Revised Statutes, gives to the streams described therein the character of navigable streams under the rules which govern the courts in determining that question, and a grant made upon a stream declared by the statute to be navigable would confer title only to the same extent as if the stream were navigable under the general definition given to such water-courses.

A right claimed by prescription rests upon the presumption that the owner of the land has granted the easement and the grant has been lost. To sustain this claim, it must appear that the use upon which the right is predicated has continued for the requisite time, during which the owner was not under disability to resist the claim. 2 Washburn on Real Property, 327, sec. 20; Watkins v. Peck, 13 N. H., 376; Melvin v. Whiting, 13 Pick., 188; Ferrell v. Ferrell, 1 Baxter, 332; Saunders v. Simpson, 37 S. W. Rep., 195. Mr. Washburn states the rule in this language: "To give a user this effect, it must be uninterrupted in the land of another by the acquiescence of the owner, for a period of at least twenty years (or the period of limitation of the State where the land lies), under an adverse claim of right; while all persons concerned in the estate, in or out of which it is derived, are free from disability to resist it, and are seized of the same in fee and in possession during the requisite period."

Where the right is claimed against one other than the defendant in a suit or some person under whom he claims, the plaintiff must prove his right and that no disability existed with the person from whom he claims to have derived the right. We do not intend to decide what would

be the rule if a prescriptive right were claimed as against the defendant in the suit or some person whose title he asserts.

Article 4147 of the Revised Statutes reads as follows: "All lands surveyed for individuals, lying on navigable water-courses, shall front one-half of the square on the water-course and the line running at right angles with the general course of the stream, if circumstances of lines previously surveyed under the laws will permit; and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning hereof, and they shall not be crossed by the lines of any survey." The first part of the article provides for the location of lands upon waters which are navigable according to the general rule of decisions on that subject. The consequences of such a location would be that the grantee would take title only to the water line of the navigable stream and the title of the bed of the stream would remain in the State. This language, "and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning hereof," was intended to prescribe a definite rule by which surveyors and others could determine what are navigable streams so far as it affects the question of locating lands thereon. The result to the locator is the same as if the stream were navigable under the general rule of decision, and he would take title limited to the water line the same as if the stream were navigable. Under article 4147 there can be no difference in the effect of a grant fronting upon a navigable stream and one fronting on a stream declared by the statute to be navigable because of its width. Each grant must give title to the center of the stream or both must be limited to the water line. The statute places all of these streams which have an average width of thirty feet on equality, whether they are actually navigable or not, and does not undertake to change the rule that limits the title of the grantee when the stream is navigable, but, in effect, applies that rule to the stream or that portion of the stream, which, being within the statutory requirement, would not be navigable except for its provisions. The grant of a tract of land upon the margin of a stream which retains an average width of thirty feet gives title to the grantee only to the water line of such stream, the title to the bed of the stream being reserved to the State.

The apparent object of the Congress of the Republic in enacting the law which is now embodied in article 4147 and of the several Legislatures which have continued it in force was to prevent locators upon the public domain from monopolizing the water of the State. At the time the act was passed, the great body of the lands of Texas was public domain, and was subject to location by many grants already in existence as well as those necessarily to be issued in the future, and the Congress, foreseeing the necessity of preserving in that territory the streams which afforded water, that the public might have the use of them, enacted this statute. By requiring the grant to be located, one-half of its front upon the stream, the locator was prevented from ex-

tending it up and down the margin and thereby controlling largely the water front on one side. By the prohibition against crossing the stream with the lines of a survey, the locator was likewise prevented from controlling the water front of the stream on both sides, and thus the water of such streams would be preserved in a larger measure to those who were entitled to locate the lands of the State. But, in addition thereto, by declaring such streams to be navigable, the State reserved the title to the beds thereof, which are subject to the control of the State.