BLACK BROS. v. STATE et al.   (No. 6975.)

(Court of Civil Appeals of Texas. San Antonio. May 30, 1923. Rehearing Denied June 22, 1923.)

1. Constitutional law ⚖➡46(1)—Constitutional questions not decided unless necessary.

The courts do not pass on the validity of a statute when not necessary under the issues involved.

2. Public lands ⚖➡176(2)—No reservations in lands sold by state so as to impress thereon ways of necessity.

Texas parted with her public land without reservation of any kind so as to impress ways of necessity, so that any one could be authorized to take or use the lands for a highway and thus impress burdens thereon.

3. Easements ⚖➡18(2)—Rule as to ways of necessity stated.

When a grantor sells part of his inclosed land surrounded by other tracts, an implied right of egress and ingress of necessity is given to his vendee, but the way should be one clearly defined.

4. Easements ⚖➡61(8)—Petition in action to establish way to lands held bad for not describing proposed route.

Petition in action to establish a way of necessity over surrounding lands to plaintiff's land located in a certain portion of the bed of a navigable stream, *held* bad as making no definite description of the proposed route.

5. Highways ⚖➡23—Commissioners' court is court of general jurisdiction to establish roads.

By Const. art. 5, § 18, and Rev. St. arts. 6872, 6874, 6876, the commissioners' court is a court of general jurisdiction for the establishment of roads, and in condemning and locating a road, the power of such court must be invoked by petition to such court.

6. Easements ⚖➡18(4)—Privity of estate is essential to way of necessity.

There is no such general right known as a way of necessity to drive over, upon, and appropriate to the use of another; private lands without some privity in estate, and where plaintiffs acquired rights in land in the bed of a navigable stream directly from the state, and there was no privity in estate between them and adjacent landowners, no right of ingress or egress to and from plaintiff's land could be implied.

On Motion for Rehearing.

7. Eminent domain ⚖➡1—Power of eminent domain comes from constitutions and is vested only in county courts.

The right to take private land for public use, called "eminent domain," must come from some constitutional grant, and in Texas is vested only in the county courts.

**8. Navigable waters ⟨key⟩37(2)—State cannot grant privilege in variance with title retained by state in beds of streams 30 or more feet wide.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 5538, enacted to conserve the water of all navigable streams or, those made navigable by law for public use and purposes, and to prevent monopoly of it, the state has no power to grant a privilege to any one for any purpose, especially putting down wells for oil, that is at variance with or antagonistic to the title retained by the state to the beds of streams 30 or more feet wide. Article 4994.

**9. Navigable waters ⟨key⟩35—Digging of oil wells in bed of stream is "appropriation of waters" thereof.**

The digging of an oil well in the bed of a navigable stream or one made navigable by law, which would necessarily result in pollution of the water, is an "appropriation" of the waters thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appropriation of Water.]

**10. Navigable waters ⟨key⟩29—State cannot divert to other purposes beds of streams set aside for certain purpose.**

The state having set apart the beds of all navigable streams, or streams made navigable by law, for certain purposes, has no power to divert the use thereof to other or different purposes where such diversion will destroy the use and set aside the purpose for which the reservations were made.

Appeal from District Court, Travis County; George Calhoun, Judge.

Trespass to try title by the State of Texas and others against Jack Black and others, individually and as composing the partnership firm of Black Bros. and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

D. T. Bowles, of Breckenridge, Scott W. Key, of Eastland, Hawkins & Hawkins, of Breckenridge, and H. S. Garrett, of Fort Worth, for appellants.

John C. Wall, of Austin, and W. A. Keeling, of Mexia, for appellees.

COBBS, J. On December 8, 1921, the state of Texas, joined by R. C. Brewster, J. Neill Smith, the Inland Oil Company, H. N. Harris, W. H. Lipscomb and J. T. Touhy, individually and as officers and trustees of the Inland Oil Company, as plaintiffs, exhibited to the Judge of the district court of Travis county, for the Fifty-Third Judicial District, their petition against defendants, A. A. Atkins, W. H. Atkins, John Robbins, Jack Black, John Black, and Will Black, the three latter individually and as composing the partnership firm of Black Bros., R. F. Brown, individually and as the owner and operating under the name of Brown Oil Company, P. A. Chapman, Jr., N. A. Moore, and the Humble Oil & Refining Co.

The petition sounds first in trespass to try title, alleging that the state of Texas owns a certain described portion of the bed of the Clear fork of the Brazos river in Stephens county, Tex.; that on March 25, 1920, the defendants unlawfully entered upon the land and ejected plaintiff, the state of Texas, and its coplaintiffs, to their damages, etc.; wherefore plaintiffs pray for title and possession and ask for a writ of possession, etc.

Next the petition avers that on June 16, 1920, the commissioner of the general land office, acting under the Mineral Act of 1917, issued to R. C. Brewster a mineral permit to drill in said portion of the river bed for oil and gas; that Brewster assigned this permit to J. Neill Smith, who contracted with the Inland Oil Company, its officers, and trustees, to drill a well in the river bed at a point permitted by the railroad commission under an order made as an exception to rule 37 of the railroad commission.

The petition contains the following:

"That the drilling of a well for oil and gas in a river bed is a very costly operation, much more costly than the drilling of a well on a flat and dry surface, and is attended with great trouble, labor, and danger; that before the actual work of drilling can be commenced a concrete foundation must be built up from the bottom of the river bed to a point several feet above the surface of the water; that the river at the point of said location above described is 12 or 15 feet deep; that said assignees constructed at great expense and labor in said river at said location the form for the placing of the concrete therein; that said assignees and their employees, while so engaged in the above work, were threatened with physical violence and criminal prosecution by the above-named defendants, and each of them; that defendant A. A. Atkins and other defendants drove the said assignees of the state's permittee, and their employees, away from their work and from the above-described lands, premises, and area, included within said permit No. 7224, with loaded shotguns, and refused, and still now refused, to permit said assignees, or their employees, from continuing with the work of drilling a well for oil and gas at the above-described location; that the said assignees, and their employees, fear that if they return to the work of so drilling said oil well, or attempt to do so, they will meet with bodily harm and injury from the said defendants, and each of them, and because of said above alleged threats and acts of the said defendants, and each of them, the said assignees find it impossible to secure workmen to work upon said above-described area and proceed with the drilling of the aforesaid oil well, and consequently said land, premises, and area above described will remain undeveloped for a long and indefinite period of time."

The petition also avers:

"That said river bed, the title to which is in the state, subject to the rights of coplaintiffs, is virtually a closed-in area, surrounded on all sides by the private property of the adjoining

landowners, previously granted to them and their predecessors in title, by the state, and especially is it true that said river bed at this particular location above described is closed in on all sides by the property, and properties, of the defendants, and each of them, and particularly by the property of defendants Atkins and Brown; that the plaintiff and its permittee, and his assigns, are entitled to a lawful and legal right of ingress and egress over the lands of the defendants and particularly the defendants Atkins and Brown, and each of them, as a way of necessity in order to go to and from and enter upon the land, premises, and area described above in paragraph 2 of this petition, as the property of this plaintiff (subject to the rights of its coplaintiffs herein); that the said defendants, and each of them, have refused and are still now refusing to permit the state of Texas or its permittee, and his assigns, from so entering upon and going through their (defendant's) aforesaid adjoining properties to reach the above-described land, premises, and area owned by plaintiff as aforesaid; that no public road affords access to plaintiff's said land, and defendants have refused to sell or lease to plaintiff as its permittees, or to grant by contract to plaintiff and its permittees any means of access over defendants' said lands, to the land of plaintiff; that it is impossible to develop the said area of this plaintiff unless such right of ingress and egress be granted to plaintiff and its permittee, and his assigns, over the said adjoining lands of said defendants, and each of them."

The prayer reads as follows:

"Wherefore, plaintiff (joined herein as aforesaid by its coplaintiffs) respectfully prays this court that an appropriate order be immediately entered granting said plaintiff a temporary injunction restraining the defendants, and each of them, their agents, officials, assignees, servants, employees or legal representatives, and each of them, from interfering, and attempting to interfere, in any way, manner or form, with the plaintiff and its permittees, and his assigns, their agents, assignees, servants, employees, and legal representatives, and either of them, in the drilling of the aforesaid well for oil and gas at the above-described Smith location, or in the drilling of any oil and gas well, or wells, in the above-described land, premises, and area embraced within said permit No. 7224 and fully described above and in the development of oil and gas on and under said property and area, from threatening and from running off said premises and area, and from attacking said plaintiff and its permittee, and his assigns, their agents, assigns, servants, employees and legal representatives, and either of them, while on or about said premises, from preventing or attempting to prevent in any way or manner said plaintiff and others above named, and each of them, from so drilling, or attempting to drill, and from so developing or attempting to develop said properties, and granting said plaintiff a temporary injunction forcing said defendants, and each of them, their agents, officials, assignees, servants, employees, or legal representatives, and each of them, to permit the plaintiff herein and its permittee, and his assigns, their agents, assigns, servants, employees and legal representatives, and either of them, to go through and over the property, or properties, adjoining said river bed area, in order to go to and from said river bed area and to and from said Smith oil well location, and to give them the right of ingress and egress thereover, and restraining said defendants, and each of them, their agents, officials, assigns, servants, employees, or legal representatives, and each of them, from interfering with or preventing, or attempting to interfere with or prevent, said parties, and each of them, from going through and over such adjoining property, or properties, in going to and from said river bed area and said Smith location in said river bed area, and from doing any and all of the above acts set forth in the third count of this petition that defendants, and each of them, be cited to appear and answer this petition; that on final hearing hereof, said above prayed for injunction, or injunctions, be made perpetual, and that plaintiff and its coplaintiffs herein have judgment against the defendants, and each of them, for the title and possession of the lands, premises and areas above prescribed, and removing from the plaintiff's and its coplaintiffs' title the cloud cast upon it by the claims of the defendants, and each of them, and that plaintiff be adjudged to be the owner, subject to the rights of its permittee, and his assigns, and that they be adjudged to be the owners of their rights and title therein, of the said land, premises and area, free from the claims asserted by the defendants, and each of them, and of the petroleum, oil and natural gas, and other minerals, in and under the same; that a way of necessity be declared and established by the judgment of the court over the lands of defendants adjoining the property described in paragraph 2 hereon, and that a way of ingress and egress be decreed in favor of plaintiff; for writ of possession, and costs of suit, and for general and special relief."

The district judge, on ex parte hearing, granted a temporary injunction—

"restraining the defendants, and each of them, their agents, officials, assignees, servants, employees or legal representatives and each of them, from interfering and attempting to interfere in any way, manner or form, with the plaintiff, the state of Texas, and its permittee, and his assigns, their agents, assignees, servants, employees and legal representatives and either of them in the drilling of the well described in plaintiff's petition at the Smith location described in said petition, and the development of oil and gas on and under said property within said area embraced within permit No. 7224 described in plaintiff's petition, and from threatening, and from running off of said premises and area, and from attacking officials of the state of Texas, or their agents, and the state's permittee and his assigns, their agents, assigns, servants, employees and legal representatives, and either of them, while on or about said premises, and from interfering in any manner with the plaintiff, its permittee and his assigns, their agents, assignees, servants and legal representatives and either of them in drilling or attempting to drill for oil and gas, or in prospecting for oil and gas on or under the premises embraced within said permit 7224; said injunction to remain in force

and effect until further orders of this court herein."

After hearing the evidence, the court rendered judgment in favor of appellees for the relief prayed for. Parts of the decree are as follows:

"And it further appearing to the court that the lands owned and claimed by the defendants entirely surround the portion of the rivers bed of the Clear fork of the Brazos river at and near the point where the permittees of the state of Texas are preparing to drill an oil well, the point where said well is located being described as follows: (Here follows the description of the point where the proposed oil well was to be drilled as designated by the said order of the railroad commission.) It is obvious from the map that the lands of Black Bros. do not surround the point at all."

The judgment then continues:

"And it appearing to the court that the plaintiff, the state of Texas, its agents, permittees and lessees, have no means of ingress and egress to or near said point where the site of said well is located except over the lands of defendants, the court is of the opinion and finds that plaintiff, the state of Texas, is entitled to a way of necessity over and across said lands for the benefit of itself, its employees, agents, permittees and lessees.

"It is therefore ordered, adjudged and decreed by the court that the plaintiff, the state of Texas, have and recover judgment of the defendants, A. A. Atkins, Jack Black, John Black, Will Black, and the firm of Black Bros., composed of the three individuals last named, and R. F. Brown, P. A. Chapman, Jr., N. A. Moore, and the Humble Oil & Refining Company, a private corporation, for the title and possession of the following described land, to wit: (Then follows the description of the river bed area by metes and bounds as described in the said mineral permit issued by the commissioner of the general land office to R. C. Brewster."

Next the judgment recites:

"It is further ordered, adjudged and decreed in accordance with the agreement of the parties hereto that the above described land and area covered by said mineral permit includes no more than the actual bed of said river lying between the first banks and does not embrace or include any portions of the patented lands contiguous thereto or fronting on or calling for said Clear fork of the Brazos river as a boundary."

Next it seems to be adjudged that the coplaintiffs of the plaintiff, state of Texas, have judgment validating the said mineral permit and that they, together with the state of Texas, have the right under said permit to develop the river bed for oil and gas. Next:

"It is further ordered, adjudged and decreed by the court that the plaintiff, the state of Texas, have an easement for the purpose of ingress and egress of its servants, agents and employees, permittees and lessees, including the coplaintiffs herein and their assigns, over and across the lands of the defendants and each of them to and near to the point in said river bed where its permittees have located the site of an oil well hereinabove described for the purpose of prospecting for, drilling and operating oil and gas wells, or for other purposes reasonably necessary for the utilization of said area, provided, however, that such right of ingress and egress shall be exercised in such manner as not to unnecessarily injure such lands or unnecessarily interfere with the use thereof by defendants."

The temporary injunction is then dissolved as to every one except A. A. Atkins.

The following paragraph then occurs:

"It is further ordered, adjudged and decreed that this judgment shall in no way interfere with, jeopardize or be in bar of any riparian rights which any of the defendants herein, or their assignees, may have as riparian owners or proprietors of lands adjoining the river, in or to the waters of the Clear fork of the Brazos river or the uses thereof, nor shall this judgment preclude the defendants, or either of them, or their assignees, from hereafter asserting such rights, it being expressly decreed and adjudged that any questions as to any riparian rights of the defendants, or either of them herein or their assignees, were and are not determined or adjudicated in this case."

A writ of possession is awarded to plaintiff, the state of Texas.

There was also a written agreement filed by the parties as to certain facts. Appellants Black Bros. have filed a printed brief, so has appellant Brown and appellant Atkins, but there is no brief for appellees on file.

We dispose of all the questions raised and bring the discussion down to the one material one that controls the disposition of the case as we view it. A much better understanding of the case would have been had of the lay of the lands if there had been prepared and filed a map showing only that portion of the river, the place where the oil well was to be sunk, together with the contiguous surveys and the other ones through and over which the so-called way of necessity was to traverse, rather than the entire county map. In the bed of the Clear fork of the Brazos river, the state issued to appellee a mineral permit to prospect and bore for oil and gas. This river runs through Stephens and other counties in Texas until it empties its waters into the waters of the deep blue sea, the Gulf of Mexico.

At the point where the exploit is to be made for the search for oil, or other minerals, the stream has an average width of 30 feet, and hence is declared to be a navigable stream over which no line of any survey may cross; nor could any person or corporation locate but one-half of the survey fronting thereupon. R. S. 5338. It is too well known, as a part of the history of Texas, that that statute was enacted in pursuance of the

state's public policy to prevent large landowners appropriating all the water fronts in this dry and arid county, by locating lands wholly along the river fronts, to the detriment of the general public.

[1] But we shall not discuss the validity of the title to the one holding the mineral rights as against the right, title, and interest of the owner of the adjacent survey to go to the center of the stream, or the constitutionality of the mineral act as urged. The courts will not pass upon constitutional questions when it does not become necessary to do so, as in this case.

[2, 3] The live and essential question involved here is: Does the state of Texas, or the appellees, holding a mineral right as urged, have a way of necessity over appellants' land, and, if so, by what right and title? All the appellants owned' and acquired their title to the lands in question in fee simple from grants under Texas, the sovereign, prior to Texas or any one else. Texas parted with her public domain without reservations of any kind, prior to the mineral law, the basis of appellee's title. She never made reservations of any kind upon the lands of appellants so as to impress thereupon ways of necessity so that any one could be authorized to take or use the lands for a highway, and thus impress burdens of any kind for the purposes and uses attempted. There is a rule of necessity, when a grantor sells part out of his inclosed lands, surrounded by other tracts, that gives an implied right of egress and ingress to his vendee, but then that way should be one clearly defined.

[4] Some of the lands here which the appellee seeks to traverse are remote from the river. The petition itself is bad in making no definite description of the proposed route.

[5] No application was ever made to the commissioners' court of the county to condemn any defined road. That court alone has that constitutional authority. See section 18, art. 5, Constitution. See Title 119, c. 1, R. S. Roads are divided into three classes, first, second, and third. Arts. 6872, 6873, and 6874. Article 6876, Revised Statutes, contains the following:

"Where one or more persons live within an inclosure either or all of them may petition the commissioners' court for a third-class road or neighborhood road to their nearest trading points, mills, gins, school and church houses and county seats, and the courts shall open such roads, as hereinafter provided in the opening of third class roads."

By virtue of the Constitution and the statutory provisions above noted, the commissioners' court is made a court of general jurisdiction for the establishment of roads. Bexar County v. Terrell (Tex. Sup.) 14 S. W. 62; Allen v. Parker County, 23 Tex. Civ. App. 536, 57 S. W. 703; Howe v. Rose (Tex.

Civ. App.) 80 S. W. 1023; McCown v. Hill (Tex. Civ. App.) 73 S. W. 851; Gaines v. Newbrough, 12 Tex. Civ. App. 466, 34 S. W. 1048; Haverbekken v. Corryell County (Tex. Com. App.) 247 S. W. 1086.

We understand the common-law doctrine concerning rights of way by necessity, but the facts in this case do not bring it within that rule. Sassman v. Collins et al., 53 Tex. Civ. App. 71, 115 S. W. 337; Pearne v. Coal Creek Mining & Mfg. Co., 90 Tenn. 619, 18 S. W. 402; United States v. Rindge (D. C.) 208 Fed. 611.

In condemning a road and locating it, as said in Haverbekken v. Corryell County, supra:

"The power of the commissioners' court to locate highways must be invoked by proper and sufficient petition, one statutory requisite of which is that it shall specify the beginning and termination of the proposed road."

[6] There is no such general right known as a way of necessity to drive over, upon, and appropriate to the use of another, private lands without some privity in estate; such property right in lands of the true owner is protected from such trespass, damage, taking, and injury by the Constitution and laws of this state. If properly condemned and taken, then adequate compensation of course would be required to be paid therefor.

There is no privity in estate shown here between appellants and appellees, and it makes no difference whether any of the lands of appellants are adjacent to the proposed oil well or not. Appellees did not acquire any right, title, or interest in the oil land from and under appellants, and no right of ingress or egress to and from the oil well upon appellants' lands can be implied, inferred, or held to exist, in fact, from any reason shown in this record, pleaded or proven.

We find no merit in appellees' contention, and the judgment of the trial court is here reversed and rendered for appellants.

On Motion for Rehearing.

We are not passing upon any controversy between the owner of the title to the land adjacent to the river where the oil well is located with that of appellees. The discussion arises only incidentally. When we spoke of the navigability of such streams, it was superinduced by suggestion of appellant, but we did not intend to, nor do we now pass upon the question as to who owns the land where the oil well is located, or the constitutionality of the law appellant presents. We were quite familiar with the opinion of Judge Brown in the case of City of Austin v. Amelia Hall et al., 93 Tex. 591, 57 S. W. 563, cited by appellee and the long line of cases citing it with approval. In that case two questions were certified to the Supreme Court for answer: The first as to a prescriptive right of passage acquired by user, and the other as to

navigable streams. There is no claim in this case of a right of way by limitation. In regard to the law defining a navigable stream and what was reserved to the state, we think it appropriate now to quote what our Supreme Court has said on the subject:

"Article 4147 of the Revised Statutes reads as follows: 'All lands surveyed for individuals, lying on navigable water courses, shall front one-half of the square on the water course and the line running at right angles with the general course of the stream, if circumstances of lines previously surveyed under the laws will permit; and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning hereof, and they shall not be crossed by the lines of any survey.' The first part of the article provides for the location of lands upon waters which are navigable according to the general rule of decisions on that subject. The consequences of such a location would be that the grantee would take title only to the water line of the navigable stream and the title of the bed of the stream would remain in the state. This language, 'and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning hereof,' was intended to prescribe a definite rule by which surveyors and others could determine what are navigable streams so far as it affects the question of locating lands thereon. The result to the locator is the same as if the stream were navigable under the general rule of decision, and he would take title limited to the water line the same as if the stream were navigable. Under article 4147 there can be no difference in the effect of a grant fronting upon a navigable stream and one fronting on a stream declared by the statute to be navigable because of its width. Each grant must give title to the center of the stream or both must be limited to the water line. The statute places all of these streams which have an average width of thirty feet on equality, whether they are actually navigable or not, and does not undertake to change the rule that limits the title of the grantee when the stream is navigable, but, in effect, applies that rule to the stream or that portion of the stream, which, being within the statutory requirement, would not be navigable except for its provisions. The grant of a tract of land upon the margin of a stream which retains an average width of thirty feet gives title to the grantee only to the water line of such stream, the title to the bed of the stream being · reserved to the state.

"The apparent object of the Congress of the Republic in enacting the law which is now embodied in article 4147 and of the several Legislatures which have continued it in force was to prevent locators upon the public domain from monopolizing the water of the state. At the time the act was passed, the great body of the lands of Texas was public domain, and was subject to location by many grants already in existence as well as those necessarily to be issued in the future, and the Congress, foreseeing the necessity of preserving in that territory the streams which afforded water, that the public might have the use of them, enacted this statute. By requiring the grant to be located, one-half of its front upon the stream, the locator was prevented from extending it up and down the margin and thereby controlling largely the water front on one side. By the prohibition against crossing the stream with the lines of a survey, the locator was likewise prevented from controlling the water front of the stream on both sides, and thus the water of such streams· would be preserved in a larger measure to those who were entitled to locate the lands of the state. But, in addition thereto, by declaring such streams to be navigable, the state reserved the title to the beds thereof, which are subject to the control of the state."

Article 4147, R. S., is now changed to articles 5338, 5339.

It will be observed from what Judge Brown said that "the grant of a tract of land upon the margin of a stream which retains an average width of thirty feet, gives title to the grantee only to the water line of. such stream, the title to the bed of the stream being reserved to the state." Apropos to this case, what is the bed of the river here spoken of?

We cannot agree with the contention of the appellee because the state was adopting a policy of preventing the location of lands, as said in City of Austin v. Hall, supra, across streams of the average width of 30 feet that it was retaining title to and property rights to sell or lease such lands "upon [or between] the margin of a stream" * * * and "the water line of such stream" and the "bed of the stream," for that would defeat the very object of the law as illustrated by the opinion of Mr. Justice Brown who said in preserving "streams which afforded water, that the public might have the use of them * * * by requiring the grant to be located, one-half of its front upon the stream, * * * prevented [such location] from controlling the water front of the streams on both sides * * * (so that) the water of such streams would be preserved in a larger measure to those who were entitled to locate the lands of the state, * * * the state reserved the title to the beds thereof."

If there were any such vacant unappropriated lands between surveys located upon and calling for the river as a boundary line and the so-called bed of the river with the reserved power of the state, as contended for, every acre of land on the margin of the stream between the bed, if any, could be sold or leased, and thereby prevent the true and real riparian owner from appropriating the water for domestic or other purposes. It is not necessary for us to pass upon that question here, as no question of appellees' title is controverted by the abutting landowner upon whose land the oil well is situated, and the only question intended to be disposed of is the one we disposed of in the original opinion that appellee has shown no right of way of

necessity, or otherwise, over and upon appellants' land.

[7] The right to take one's land for public use under our Constitution and laws must come from some constitutional power that authorizes the taking of private property. It requires some sovereign power to vest the procedure in some tribunal. In this state, such power, called eminent domain, is vested only in the county courts, and if not there then no other court is endowed with it.

[8, 9] A careful reinvestigation of this case, on rehearing, has convinced this court that the state has no power or authority to grant the privilege to any one for any purpose, especially putting down wells for oil, that is at variance with or antagonistic to the title retained by the state to the beds of streams 30 or more feet wide, for certain specific purposes, as is indicated in article 5338, Vernon's Sayles' Civ. Statutes, and as construed by the Supreme Court in the cited case of City of Austin v. Hall, 93 Tex. 591, 57 S. W. 563. As held in that opinion the object of the statute, which was enacted by the Congress of the Republic of Texas, and embodied in succeeding statutes, was to conserve the water of all streams really navigable or those made navigable by law, for public use and purposes and to prevent the monopoly of it by individuals or corporations. The jealous care exercised by the state over the waters of its streams is indicated by the provision that it can be appropriated only for irrigation, mining, milling, manufacturing, the development of power, the construction and operation of waterworks for cities and towns, or for stock raising. Article 4994. It may be argued that the digging of oil wells is not an appropriation of the waters of a stream, but there could not be a more perfect appropriation of the waters, for by its pollution of the stream it destroys the use of the waters for all purposes by man, beast, or fishes. It is known to every one that an oil well cannot be operated without a waste of oil about it, and there could not be an operation of a line of oil wells in the waters of a stream without rendering the water unfit for use and utterly destroy any fish life in the waters. The waters of navigable streams were not only reserved for use for man and beast, but were conserved for the propagation and rearing of fish for food purposes.

[10] The state of Texas having set apart the beds of all navigable streams for certain purposes has no power to divert the use thereof to other and different purposes, especially. when the diversion will destroy the uses and set aside the purposes for which the reservation was made. No more effective means could be employed by the state to effectually withdraw the reservation of the waters and destroy the use for which the reservation was made than to "pour oil upon

the troubled waters." There has been no authority given by law to the state to set aside a grant, express or implied, made by it, and, when it seeks to divert the privileges of a grant made to the public and place them in the hands of an individual or corporation, it is giving an exhibiton of lawlessness, not filled with inspiration to obedience to law for the citizens of the commonwealth. The streams were sacredly set apart for water and not for oil, and no right of way to such streams should be granted except to obtain water.

At least since 1869, it has been a violation of a statute to pollute the water of any water course, lake, pond, marsh, or common sewer, and we understand that law has been made more vigorous and effective than ever by the Thirty-Eighth Legislature, and yet the spectacle is presented of the state of not only licensing the violation of one of its laws, but actually going into court and lending all its prestige and power to oil men and corporations to open up a highway across private property in order for them to more easily approach the places where the pollution of a stream will be begun and prosecuted. This court will not place the stamp of its approval upon any such scheme.

The motion for rehearing is overruled.