KING v. SCHAFF. (No. 9012.)

(Court of Civil Appeals of Texas. Ft. Worth. June 8, 1918.)

1. APPEAL AND ERROR ⬢⇒854(1)—JUDGMENT DENYING RELIEF—REVIEW.

Where judgment rendered does not purport to give reasons for denying injunction, court on appeal is required to affirm judgment, if plaintiff's petition was subject to special exceptions directed against it, or if evidence failed to sustain cause of action, though well pleaded.

2. NAVIGABLE WATERS ⬢⇒1(7) — NAVIGABILITY—BURDEN OF PROOF.

In suit to restrain defendant from taking and appropriating water from a stream running through plaintiff's land, where plaintiff alleged ownership in land constituting bed of stream and of land on both sides of stream, burden was on defendant, although plaintiff alleged nonnavigability, to establish navigability, within Vernon's Sayles' Ann. Civ. St. 1914, art. 5338, as to navigable streams not being crossed by lines of survey.

3. NAVIGABLE WATERS ⬢⇒1(7)—NAVIGABILITY—EVIDENCE—SUFFICIENCY.

In suit to restrain defendant from taking and appropriating water from a stream running through plaintiff's land, evidence held insufficient to show that stream was navigable, within Vernon's Sayles' Ann. Civ. St. 1914, art. 5338, as to navigable streams not being crossed by lines of survey.

4. NAVIGABLE WATERS ⬢⇒1(2)—"NAVIGABLE STREAM"—WIDTH.

By the terms of Vernon's Sayles' Ann. Civ. St. 1914, art. 5338, and decisions thereunder a navigable stream must maintain an average width of 30 feet.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Navigable.]

5. NAVIGABLE WATERS ⬢⇒36(3) — "BED OF STREAM."

The bed of a navigable stream, to which state has title, is that portion of its soil covered by the water under normal conditions and seasons (citing Words and Phrases, Second Series, River Bed.)

6. NAVIGABLE WATERS ⬢⇒39(2) — RIGHT OF RIPARIAN OWNER.

Although stream running through plaintiff's land was navigable, plaintiff had the right to use water therefrom for domestic purposes or natural wants, so long as such use was reasonable, regardless of effect upon lower riparian owners.

7. WATERS AND WATER COURSES ⬢⇒39(2) — TRESPASS.

Although stream running through plaintiff's land was navigable, defendant would not have the right to trespass upon plaintiff's land in order to take water from the stream, regardless of method employed.

8. WATERS AND WATER COURSES ⬢⇒156(5)— RIGHT OF RIPARIAN OWNER.

Although plaintiff, who owned land on both sides of stream, had consented for a consideration to defendant's taking water through pipes on plaintiff's land, where consideration had failed, plaintiff would have the right to prevent defendant's use of pipes.

9. NAVIGABLE WATERS ⬢⇒39(2) — RIPARIAN OWNERS — INTERFERENCE WITH RIGHTS—REMEDY.

Injunction is a proper remedy to a riparian owner on navigable stream, whose rights as such have been unlawfully invaded or interfered with.

10. NAVIGABLE WATERS ⬢⇒39(2)—RIGHTS OF RIPARIAN OWNER—RAILROADS.

That federal government, under "McAdoo statute," was exercising supervision over defendant's line of railway, would not enlarge defendant's right to trespass upon plaintiff's land and take water from a stream thereon, since even sovereign cannot exercise right of eminent domain, except by condemnation under due process of law.

11. NAVIGABLE WATERS ⬢⇒39(2)—RIGHT OF RIPARIAN OWNER.

Conceding that defendant had right superior to plaintiff to water in stream crossing plaintiff's land, it would have no right, in order to use water, to trespass upon plaintiff's land without compensating him therefor.

Appeal from District Court, Shackelford County; Joe Burkett, Judge.

Suit by C. H. King against C. E. Schaff, receiver of the Missouri, Kansas & Topeka Railway Company of Texas. Relief denied, and plaintiff appeals. Reversed and remanded, with instructions.

W. D. Girand and D. M. Oldham, Jr., both of Abilene, for appellant. Walter L. Morris, of Albany, Scott & Brelsford, of Eastland, C. C. Huff, of Dallas, and Theodore Mack, of Ft. Worth, for appellee.

BUCK, J. This is a suit by C. H. King against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas, asking for an injunction restraining the defendant from taking and appropriating water from the Clear Fork river within plaintiff's lands, located in Jones and Shackelford counties. The Clear fork is a tributary and arm of the Brazos river. Plaintiff alleged that the Clear fork is a small stream that runs across his lands, and that the water therefrom was used by him in watering his live stock and for domestic and other purposes in the operation of his farms and ranches; that he owned said water contained in that part of the stream which traversed his lands; that on account of the severe drouth which had existed in that section of the state said water stood in holes; that defendant's railway line crossed a portion of plaintiff's lands, but that no part of the stream, and especially the portion mentioned, or the water therein, belonged to defendant; that on defendant's right of way it had for two years operated a pump plant, and unlawfully and without the consent of plaintiff, and with the intent to appropriate the same

to its own use and benefit, used and consumed quantities of said water, hauled and carried it away, sold and delivered it to citizens and the people living in and around Albany, Cogdill, Acapo, and other places in that section, and had used great quantities of said water for the purpose of operating its line of railway. It was further alleged that, though plaintiff did not know the exact quantity of water so used by defendant, yet that it was at least five car loads a day since February 18, 1916 (two years prior to the filing of the suit), and that said water was of great value to plaintiff and of the reasonable market value of $1 per carload; that, if the taking of said water and the trespasses complained of should be allowed to continue, plaintiff's live stock would be caused to suffer, and he and his tenants would be forced to do without water, to their great damage. In a supplemental and reply petition, plaintiff alleged that up to about two years prior to the filing of the suit defendant had paid for the water used, by issuing to plaintiff and his wife each an annual pass over its lines, and by paying money therefor in addition, and that for this consideration plaintiff permitted the use of water by defendant. He further alleged that defendant's pump station was on its right of way, but that defendant, without plaintiff's consent and in the absence of condemnation proceedings, had run a pipe line over plaintiff's lands in order to reach the river and the hole of water. It was further alleged that the Clear fork is not a navigable stream, and that the appropriation of the water took place at a point 100 to 200 yards distant from where defendant's right of way crossed the stream. Both pleadings of plaintiff were duly verified.

Defendant pleaded, by way of several special exceptions, to plaintiff's original petition, to the effect: (1) That the petition was not properly verified; (2) that it failed to allege that the Clear fork was not navigable, under article 5338, Vernon's Sayles' Tex. Civ. Stats.; (3) that said petition failed to allege the insolvency of defendant, etc. It further pleaded, as to the merits, that the Clear fork was a navigable stream 30 feet wide, "and that under the laws of this state the title to the underflow and overflow of said water is not in plaintiff, or the party who has abutting property near, but in the state of Texas, and plaintiff has shown no such connection with the hole of water, nor legal appropriation, as provided by law, that would entitle him to the exclusive use and control of said water, which he has appropriated and which is the basis of this suit." It was further pleaded that defendant, as a common carrier, had transported such water, as it had been taken from the Clear fork, to municipalities and individuals in the drouth-stricken portions of that part of the state, and that it was a public necessity to supply them with water, and to restrain defendant from so doing would result in a public and private ca-

lamity; further, that the defendant was operating its trains and line of railway under direct federal authority, exercised by Hon. W. G. McAdoo, Secretary of the Treasury, by virtue of an act of Congress (Act Aug. 29, 1916, c. 418 [U. S. Comp. St. 1916, § 1974a]), and that any act done by it was so done by virtue of said authority. It further pleaded that because of the lapse of years, during which defendant had operated its pump plant and had taken water from the said stream, and the long-continued acquiescence therein by plaintiff, should the injunction be granted, the defendant would not be able to operate its line of railway and perform its functions as a common carrier. This portion of defendant's answer seems to have been intended as a plea of estoppel, though evidently not sufficient to constitute such plea.

[1] Trial was had and evidence submitted, and the court entered an order and judgment denying the writ, from which judgment the plaintiff has appealed. The judgment rendered does not purport to give the reasons for the court's action in denying the writ; hence we would be required to affirm the judgment, if it should appear that plaintiff's petition was insufficient to show that he was entitled to the relief sought, or was subject to any of the special exceptions directed against it, or that the evidence fails to sustain the cause of action, even though well pleaded. The only evidence introduced consisted of the testimony of plaintiff, the deed under which he held title, and the plat showing the location of that part of plaintiff's land, which included the sections through which the Clear fork ran, and which was crossed by defendant's right of way, also the pump station, the hole from which the alleged water was being taken, and the defendant's bridge spanning the river.

. One of the principal grounds of defense, relied on in the court below and urged in defendant's brief, is that the proof fails to show that the Clear fork, where it crosses plaintiff's land, and where the hole of water is located, is not navigable, as defined under article 5338, supra. This statute, under title 78, treating of "Lands—Acquisition for Public Use," and title 79, c. 5, treating of "Surveys and Field Notes," is as follows:

"All lands surveyed for individuals, lying on navigable water courses, shall front one-half of the [public] square on the water course and the line running at right angles with the general course of the stream, if circumstances of lines previously surveyed under the laws will permit; and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning hereof, and they shall not be crossed by the lines of any survey."

In the case of Bunnell et al. v. Sugg, 135 S. W. 701, it was held that a contention that a survey is void on account of crossing a navigable stream is not available against a patent issued by the state on the part of one claiming under a junior grant; that the stat-

ute is merely directory, and though a stream was, within the statutory definition, navigable, the fact that a line of survey crossed it would not render the survey or grant illegal or void. In this case it is also intimated, though not decided, that the statute providing that all streams retaining an average width of 30 feet should be considered navigable streams within the meaning of said statute, should be construed to mean that the width of the water in the stream should average 30 feet rather than the distance between the banks of the stream. In construing this statute, in the case of City of Austin v. Hall, 93 Tex. 591, 597, 57 S. W. 563, 564, the Supreme Court said:

"The first part of the article provides for the location of lands upon waters which are navigable according to the general rule of decisions on that subject. The consequences of such a location would be that the grantee would take title only to the water line of the navigable stream and the title of the bed of the stream would remain in the state. This language, 'and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning thereof,' was intended to prescribe a definite rule by which surveyors could determine what are navigable streams so far as it affects the question of locating lands thereon. The result to the locator is the same as if the stream were navigable under the general rule of decision, and he would take title limited to the water line the same as if the stream were navigable. * * * Each grant must give title to the center of the stream, or both must be limited to the water line. The statute places all of these streams which have an average width of 30 feet on equality, whether they are actually navigable or not, and does not undertake to change the rule that limits the title of the grantee when the stream is navigable, but in effect applies that rule to the stream or that portion of the stream which, being within the statutory requirement, would not be navigable, except for its provisions. The grant of a tract of land upon the margin of a stream which retains an average width of 30 feet gives title to the grantee only to the water line of such stream; the title to the bed of the stream being reserved to the state."

[2, 3] We are of the opinion that in the instant case the burden of proof was on the defendant to establish the navigability of the stream. Plaintiff had alleged ownership in the land constituting the bed of the stream, and the ownership of the land on both sides of the stream. His deed showed that the survey crossed the river. No objection was made to the character and effect of this deed as tending to establish ownership. While his supplemental petition did contain an allegation that the stream was nonnavigable, we do not think that such allegation cast the burden upon him to prove the non-navigability of the Clear fork. The proof certainly does not establish the navigability of the stream, but rather is to the contrary effect. The fact that the survey crossed the stream was at least persuasive that the grant from the state to the patentee contained such calls, and that the state regarded the stream as not being navigable. If it be correct, as held in Bunnell et al. v. Sugg, supra, that article 5338 is merely directory,

204 S.W.—66

and not mandatory, then, if the state issued a patent to a section which crossed the stream and lay on both sides thereof, such patent would not be void, but at most merely voidable at the instance of the state, and as to third parties would convey title to the bed of the stream. But, in addition to this, the testimony of plaintiff himself, the only evidence upon this point, except the recitation of the deed under which he deraigned title, rather supports the theory of nonnavigability. Under cross-examination he testified:

"I would not say that the Clear fork will not average more than 30 feet in width from bank to bank. I would not say that, for I have never measured it. I would not say. I could not be positive about that, and would not say that it would not average 30 feet."

Speaking of the hole of water in question, he said:

"I guess it was then about two weeks before about 100 yards long. It was at least 100 yards long or longer, and was 25 or 30 feet wide, and about 3 or 4 feet deep."

On redirect examination he testified:

"The average width of the Clear fork from bank to bank is not 30 feet. * * * I will say that three-fourths of it is dry. Three-fourths of the bed of the river is dry, and that part does not maintain an average width of 30 feet. The river does not maintain an average width of 30 feet."

[4] By terms of article 5338, supra, and the decisions thereunder, a stream in order to be held navigable must maintain an average width of 30 feet. As to what constitutes the river bed, which, in streams navigable either under the common law or by statute, is reserved to the state for public use, the authorities seem to be in conflict. Some authorities hold that the "bed" includes all the land between the outer edges of the "shores" that that soil which is covered by the water at its highest stage (State v. Gerbing, 56 Fla. 603, 47 South. 353, 356, 22 L. R. A. [N. S.] 337; Sun Dial Ranch v. May Land Co., 61 Or. 205, 119 Pac. 758, 762); while others hold that the "bed" is that part of the channel covered by water at its low mark (State v. Longfellow, 169 Mo. 109, 69 S. W. 374). Another line of authorities takes the middle ground, holding, as stated in 4 W. & P. (2d Series) 402, that:

"The 'bed of the river' is that portion of its soil which is alternately covered and left bare as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean stage during the entire year without reference to the extraordinary freshets of the winter or spring, or the extreme drouths of the summer or autumn"—citing City of Peoria v. Cent. Nat. Bank, 224 Ill. 43, 79 N. E. 296, 299, 12 L. R. A. (N. S.) 687; Alabama v. Georgia, 23 How. (64 U. S.) 505, 16 L. Ed. 556.

[5] There are some intimations in certain of the Texas decisions (City of Austin v. Hall, supra, and Bunnell v. Sugg, supra) to the effect that "the bed" begins at the water's edge, or water line, yet we have found no Texas authority announcing such

doctrine definitely, and we are of the opinion that the rule laid down in the quotation from Words and Phrases, supra, is the rule generally adopted by our state courts in determining what constitutes the bed of a navigable stream; i. e., the bed of a stream is that portion of its soil covered by the water under normal conditions and seasons. We are of the opinion that in the instant case the evidence fails to show that the bed was 30 feet wide on an average, and we are further of the opinion that the burden was on the defendant to establish the affirmative of this issue. In so holding, we are not ignoring the rule that in a petition for injunction the material facts must be alleged with sufficient certainty to negative every other reasonable inference therefrom inconsistent with the right sought to be enforced or protected. Plaintiff alleged that he was the owner of the water, and it devolved upon defendant to plead and establish facts inconsistent with such claim of ownership.

[6, 7] Moreover, even though the stream was navigable, plaintiff had the right to use the water therefrom for domestic purposes or natural wants, so long as such use was reasonable, regardless of the effect upon other riparian owners lower down on the stream. 40 Cyc. p. 564; Baker v. Brown, 55 Tex. 377; Fleming v. Davis, 37 Tex. 173; Rhodes v. Whitehead, 27 Tex. 304, 84 Am. Dec. 631. Furthermore, defendant did not have the right to commit a trespass by going upon plaintiff's land in order to take the water from the stream, whether such trespass be committed by the transportation in wagons or other receptacles for holding the water, or by the laying or maintaining of water pipes across plaintiff's land for the purpose of drawing the water from the bed of the river.

[8] We think this would be true, even though the original laying of the water pipes was with plaintiff's consent and for a consideration. If the consideration had failed, as shown in this case, and the agreement rescinded by the railway company, and for that reason plaintiff had withdrawn his consent to the further use of the pipes for said purpose, he would have the right to prevent defendant's use of the pipes on plaintiff's land as a means of withdrawing the water from the bed of the river.

[9] Injunction is a proper remedy to a riparian owner whose rights as such have been unlawfully invaded or interfered with. 40 Cyc. 567, 568. Plaintiff's evidence tended to establish his contention that the use by the defendant of the water from this water hole, in the quantities which it had been using it, would probably result in the withdrawal of all the water from said hole, and would cause plaintiff and his tenants, who relied on said hole of water, in part at least, for the watering of their stock and for domestic purposes, great and irreparable damage.

[10, 11] We do not think that the fact that the federal government under the "McAdoo statute," pleaded and relied on by defendant, was exercising some sort of supervision or control over the defendant's line of railway, would authorize defendant to take the property of a citizen or to trespass upon his lands any more than if such supervision and control was not in effect. Even the sovereign power, under our democratic form of government, cannot exercise the right of eminent domain, except by condemnation under due process of law. But, even though it might be reasonably contended that the railway company had the right to use the water for the operation of its trains, and that that right was superior to the right of plaintiff to its use for his domestic purposes, yet defendant would not have the right to use the water and trespass upon plaintiff's lands in order to do so, without compensating him therefor. Certainly it would not have the right to use said water and commit said trespass for the purpose of selling the water as an article of commerce.

Taking the pleadings and the evidence as a whole, we are of the opinion that plaintiff established his right to the injunctive relief sought, and that the court committed error in not granting such relief. For which reason the judgment of the trial court is reversed, and the cause is remanded, with instructions to the trial court, if the conditions upon another hearing are of the same character as disclosed in the trial below, to grant and perpetuate the injunction asked.

Reversed and remanded, with instructions.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes