## DIVERSION LAKE CLUB v. HEATH et al.
### No. 7765.

Court of Civil Appeals of Texas. Austin.

March 8, 1933.

Rehearing Denied March 29, 1933.

## WISCHKAEMPER et al. v. CLEMENT & WALKER.
### No. 3985.

Court of Civil Appeals of Texas. Amarillo.

March 15, 1933.

See, also, 33 S.W.(2d) 479; 52 S.W.(2d) 380.

Hertzberg & Kercheville and Templeton, Brooks, Napier; & Brown, all of San Antonio, for appellant.

Ben H. Kelly, of San Antonio, and Ocie Speer, of Austin, for appellees Heath and Matthews.

Marcus W. Davis, of San Antonio, for appellee Norman W. Self.

BLAIR, Justice.

Appellant, Diversion Lake Club, instituted this proceeding to restrain appellees R. W. Heath, M. L. Matthews, and Norman Self from trespassing upon its lands riparian to Diversion Lake and Medina river, as a way to reach and fish in the waters of said lake and river; and also to restrain them from using boats and fishing in said waters. By cross-action appellees sought to perpetually restrain appellant from interfering with their right as citizens of this state to fish in or take fish from the waters in question, and to use the banks of the lake and river in the exercise of their right of fishery, alleging that such waters were navigable or public within the terms of article 5302, R. S. 1925, which reserved them, together with all the fish therein, to the state for the use and benefit of the public. The jury found on the sole issue submitted that the Medina river "retains an average width of thirty feet from its mouth up" to a point above the riparian lands and waters in controversy; and judgment was rendered perpetually restraining appellant from interfering with the right of appellees to enter upon the waters in controversy in boats and to fish in and take fish therefrom, the order requiring appellees to enter the waters of the lake and river by way of a public road and bridge across them. The judgment perpetually restrained appellees from interfering with appellant's existing fences, from trespassing upon appellant's abutting or riparian lands as a way of entering the waters, and from using the banks of said Diversion Lake and Medina river in the exercise of their right of fishery. Appellant has appealed from the order permitting appellees to fish in the waters; and appellees have cross-assigned error with regard to the order restraining them from using the banks of the lake and river in the exercise of their right of fishery.

The evidence shows that two dams have been constructed under authority of the state across the Medina river in Medina county, Tex. The first one constructed is known as the Medina dam and impounds the commingled waters of the Medina river and flood waters from water sheds above the dam, and the large body of water thus formed is known as Medina Lake. The second dam is about four miles below the Medina dam, and is known as the Diversion dam, and impounds the commingled waters passing over or through the Medina dam, the waters of Medina river, and the flood waters from watersheds above the Diversion dam; and the body of water thus impounded is known as Diversion Lake. The Diversion dam was constructed under authority of the state statutes to impound waters for an irrigation project or enterprise. Appellant's lands are defined in the judgment "as two strips of land, each approximately 1500 feet in width and four miles in length, fronting on the shore line the entire distance on Diversion Lake on both sides and bounded by the main dam and the Diversion dam, except the public road which runs between the two dams crossing the Lake and River." Appellant's predecessors in title purchased the lands from the state, the grants calling for or extending only to the banks of the Medina river. Appellant, Diversion Lake Club, is comprised of about 25 members, and it has fenced the lands described and uses them as a recreation resort for its members exclusively. Deer, turkey, and quail are raised on the premises, and the club stocks the waters in question with fish; and the members of the club use the lake and river for hunting ducks, fishing, boating, and bathing. Appellant is not interested in the irrigation project; and the irrigation company has the right to use all the waters in Diversion Lake for irrigation purposes, if it desires, or should it become necessary to do so. Appellees' sole interest is that of the public generally to boat and fish in the navigable or public waters of this state. The evidence fully sustains the jury's finding that the Medina river retains an average width of thirty feet from its mouth up to the Medina or main dam, which, of course, includes the portion abutting on appellant's lands. Appellees were shown to be citizens of this state and to have fished in the waters for a number of years, entering same by boat from the pub-

lic road and bridge across the lake and river, until appellant stopped them by a temporary injunction issued herein, which was sustained on appeal to the Court of Civil Appeals at San Antonio (33 S.W.(2d) 479), because the question of whether the waters in question were navigable or public had not been determined by a trial, the court holding that the burden was upon appellees to prove such issue before they might exercise their right of fishery in said waters. On this trial on the merits, the temporary injunction was dissolved and the judgment or orders aforementioned entered.

The appellant presents two main propositions, which are in substance as follows:

1. That the court erred in permitting appellees to enter upon and fish in the waters of Diversion Lake, because such waters are within appellant's inclosure and are situated wholly upon lands belonging to appellant, and in which appellees have no right or interest, but are naked trespassers.

2. That the court erred in permitting appellees to fish and use a boat in all of the waters of Diversion Lake, because all or a substantial portion of said waters are impounded upon lands belonging to appellant and lying beyond the banks which originally retained the normal flow of the Medina river before the construction of Diversion dam.

The specific contention of appellant under its first proposition is that under the common law of England, which was adopted in 1840 (Rev. St. 1925, art. 1), and which has since been the rule of decision in Texas, all grants by this state of lands lying on fresh water statutory navigable streams have carried with them, as a part of the title to the soil, full riparian rights; and that where, as in the instant case, the lands "on each side of the river or stream belong to the same person, he has the exclusive right of fishing so far as his lands extend along the same." Kent's Commentaries (12th Ed.) vol. 4, p. 412. And further, that except for the holding that irrigation is one of the riparian rights, the law of riparian rights in Texas is the same as the law of riparian rights at common law.

Whatever may have been the right of common, free, or several fishery in the navigable nontidal rivers or streams of England under the common law as it existed in 1840, and about which the authorities seem to be quite unsettled, is not material to a decision in this case, because the right of fishery in public or navigable waters in Texas must be determined not only in the light of the Mexican civil law and the common law, but also in the light of statutory enactments. Suffice it to say here, that the chief difficulties as to the common-law rule seem to have arisen with regard to determining the primary question of whether a particular stream or river

should be classified as "navigable" or "nonnavigable," and according to the common-law rule the criterion of navigability was whether the tide ebbed and flowed in the stream. This test was found to be unsuitable for determining the navigable character of the large rivers of America, and in most states the rule of "navigability in fact is navigability in law though the tide does not flow in the stream" was adopted. 11 R. C. L. 1029. Since 1837, the statutory test of navigability of a nontidal stream in Texas was and is now made to depend upon whether the stream retains an average width of 30 feet from its mouth up, without regard to navigability in fact. Acts 1837, p. 63, article 5302, R. S. 1925. It may also be observed that, while the right of public fishery in nontidal navigable streams may have been quite unsettled in earlier days, the rule at common law seems to have become finally established at least by 1840, that when the navigability of a nontidal stream was established, the crown held the rights of fishery in such stream, as well as navigable rights, in trust for the use and benefit of the English people, without regard to the ownership of the soil beneath the stream; and, of course, there was always unanimity of decision that at common law, where the ownership of the land beneath the tidal navigable streams remained in the crown, the public had a general right of fishery in such navigable streams or waters. 11 R. C. L. 1021–1029; 27 R. C. L. 1316; 26 C. J. 602; Willow River Club v. Wade, 100 Wis. 86, 76 N. W. 273, 42 L. R. A. 305. And except as to statutory or different tests as to navigability and as to certain powers given the federal government by the United States Constitution, the powers of Parliament, and the prerogatives of the King of England with regard to the right of the public to fish in public waters and navigable streams, as exercised under the common law of England and the civil law, have been exercised by the several sovereign states of America. Texas has exercised similar powers and prerogatives since its earliest existence as a sovereignty; and, while Texas adopted the common-law rule of decision in 1840, it was with statutory and constitutional exceptions, and the law is well settled that as to ownership of the beds of statutory navigable streams, as well as the ownership or control of the waters in statutory navigable streams, and the rights of the general public therein, are determinable in the light of the civil and common law, as modified by the Acts of the Republic of Texas 1837, p. 63, and in the light of the court decisions that with respect "to the law of streams, Texas has adopted only such common-law rules as are suitable to its conditions and jurisprudence"; and that in adopting the common law of England in 1840, "Texas did not intend to adopt the common-law rule applicable solely to beds of tidal

streams and apply it to navigable and unnavigable nontidal streams"; but that under Acts of 1837, which modified both the common and civil law, and which declared that all streams or water courses that retain an average width of thirty feet from mouth up shall be navigable streams, whether so in fact, the state of Texas became the owner and has since [article 5302, R. S. 1925] continued to be the owner of thousands of miles of such river beds [Manry v. Robison (Tex. Sup.) 56 S.W.(2d) 438]. We make these observations as to ownership of the beds of statutory navigable streams in view of the facts that the governing principle for the right of public fishery is deducible from the ownership or control by the state of Texas of the beds and waters of such statutory navigable streams.

With regard to the public policy of this state to reserve public water courses and unsold fresh water streams, etc., in itself, and as to the property right in all fish and aquatic animal life therein, the Legislature has created a game, fish, and oyster commission, with general regulatory powers over all such matters, and has enacted several statutes which specifically declare such public policy. Title 67, chapters 1, 2, and 3, R. S. 1925. One of these statutes is the Act of 1919 (article 4029, R. S. 1925), which reads as follows: "Such of the fresh water lakes, rivers, creeks and bayous within this State as may be embraced in any survey of private land shall not be sold, but shall remain open to the public. If the Commissioner stocks them with fish, he is authorized to protect same for such time and under such rules as he may prescribe."

Another act was passed in 1925 (article 4026), which reads as follows: "All fish and other aquatic animal life contained in the fresh water rivers, creeks and streams and in lakes or sloughs subject to overflow from rivers or other streams within the borders of this State are hereby declared to be the property of the people of this State."

In the recent case of Manry v. Robison, supra, the Supreme Court made a careful and exhaustive review of the law with regard to the ownership by the state of the beds of navigable streams, and under what law the title was or is acquired. And from this decision and others applicable, it may be regarded as settled law that since the adoption of the common law in 1840, Texas courts have uniformly held that the title to all navigable· streams coming within the statutory definition (Acts 1837, p. 63, art. 5302, R. S. 1925) is reserved in the state; that the rights of owners of lands bordering on or riparian to such statutory navigable streams or waters must be determined in the light of the civil and common law, as modified by statutory enactments and court decisions; and that the title to the waters in "a public navigable stream under the statute * * * is in the state in trust for the public." Motl v. Boyd, 116 Tex. 82, 286 S. W. 458, 468; Landry v. Robison, 110 Tex. 295, 219 S. W. 819; City of Austin v. Hall, 93 Tex. 597, 57 S. W. 563; State v. Grubstake Invest. Ass'n, 117 Tex. 53, 297 S. W. 202; State v. Black Bros., 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181; King v. Schaff (Tex. Civ. App.) 204 S. W. 1039; Illinois C. R. Co. v. Illinois, 146 U. S. 387, 13 S. Ct. 110, 36 L. Ed. 1018; 19 Tex. Jur. 688, § 2. In accordance with these general principles of law and as being deducible therefrom, Texas courts have uniformly held that "there is a general right in the public to fish in public streams and waters, subject to regulations imposed by the state." 19 Tex. Jur. 690, § 3; Heath v. Diversion Lake Club (Tex. Civ. App.) 33 S.W.(2d) 479; Dincans v. Keeran (Tex. Civ. App.) 192 S. W. 603. This right, however, does not authorize or permit the trespass upon abutting or riparian lands as a way to reach and fish in public waters or streams. Smith v. Godart (Tex. Civ. App.) 295 S. W. 211; Fischer v. Barber (Tex. Civ. App.) 21 S.W.(2d) 569; Dincans v. Keeran (Tex. Civ. App.) 192 S. W. 603; Gustafson v. State, 40 Tex. Cr. R. 67, 48 S. W. 518, 43 L. R. A. 615. But the owner of riparian lands may not enjoin others from using the banks of a navigable stream in the exercise of their right of fishery, the only requirement being that they shall make a reasonable use of navigable streams and the banks thereof for fishing. Dincans v. Keeran, supra. And while a riparian owner has the right of fishery and to use the waters and banks of a riparian statutory navigable stream, such right is not necessarily the right of a riparian owner alone, but also exists as a deduction from the general rule at both the civil and common law, as modified by statute in Texas, to the effect that the public have a prima facie right of fishery in all statutory navigable streams, the same as they have in other public waters. Stephensen v. Wood, 119 Tex. 564, 34 S.W.(2d) 246; 11 R. C. L. 1029, § 16; 27 R. C. L. 1317; 26 C. J. 602.

The specific contention presented by the second proposition is that even though it should be held that appellees and members of the public generally are entitled to boat, fish, and hunt in the waters of the Medina river at the point in question, the order went too far in extending that right to all of the waters of Diversion Lake, because a substantial portion of these waters is impounded upon and over lands belonging to appellant, which lie beyond the banks of the Medina river, and which were conveyed to appellant and its predecessors in title by deeds from the state. This contention is not sustained.

Aside from the fact that appellant, upon whom the burden rested, failed to show the

lines describing its own lands, which were submerged by the waters of the artificial Medina Diversion Lake, thereby rendering it legally impossible for the court to grant the relief it prayed for, the proposition does not state the legal principle governing the question presented; and we pass to a consideration of that principle.

The evidence is undisputed that appellant's predecessors in title voluntarily built the dam across the navigable Medina river, which raised the waters of the navigable stream so as to flood and impound them above and over their own lands. Appellant is bound by these acts of its predecessors in title; and the principle governing the question thus presented is well stated in 27 R. C. L. 1205, as follows: "If a person artificially raises the level of a navigable lake so as to flood his own lands, the public rights in the lake will be correspondingly extended so long as such artificial condition exists; and if he maintains that condition for the prescriptive period during which the public use and enjoy the lake in its new condition, the title to such lands, so far as necessary to maintain the artificial condition, will vest in the state of dedication."

This text is sustained by the case of Village of Pewaukee v. Savoy, 103 Wis. 271, 79 N. W. 436, 50 L. R. A. 836, 74 Am. St. Rep. 859, and authorities there cited. See, also, 50 L. R. A. 836–847, and cases there cited, many of which involve the question of whether the common right of fishery extended correspondingly to the artificially increased level of the lake or lakes involved. True these cases involved the artificial raising of the level of the waters of navigable lakes, while in the instant case the facts involve the artificial raising of the level of the waters of a navigable stream or river so as to flood or inundate appellant's own lands. But it can easily be seen that our conclusion is but the logical result of the principle common to all, and is a proper deduction from the governing legal principle that, if a person voluntarily artificially raises the level of the waters of a navigable lake, river, or stream so as to flood his own lands, the public right of fishery in such waters will be correspondingly extended so long as such artificial condition exists.

We do not wish to be understood, however, as passing upon any question of prescriptive right, title, or easement that the state might acquire to the newly inundated lands, so far as necessary to maintain the artificial condition of Diversion Lake. That question is not involved. Nor is there any right in the public to have the artificial lake maintained, because the irrigation company has the first right under its grant from the state to use all the waters of the lake, in its irrigation project should it ever become necessary to do so. We simply hold that since

appellant is bound by the acts of its predecessors in title in artificially raising the level of the waters of the navigable stream so as to flood or inundate the lands of the appellant, the public right of fishery is correspondingly extended to the entire waters of Diversion Lake, so long as such artificial condition exists.

Appellant cites as authority for its aforementioned second proposition the cases of State ex rel. v. West Tennessee Land Co., 127 Tenn. 575, 158 S. W. 746, 747, Ann. Cas. 1914B, 1045; Fisher v. Barber (Tex. Civ. App.) 21 S.W.(2d) 569; Fin & Feather Club v. Thomas (Tex. Civ. App.) 138 S. W. 150; and Smith v. Godart (Tex. Civ. App.) 295 S. W. 211. These cases are not in point. Neither of them involves the voluntary acts of the owner causing the overflow or inundation of his own lands previously granted in fee by the state; but in each case the facts show that the overflow or inundation was the result of the construction of a dam or channel by others, which the owner in no manner authorized, caused to be done, or ratified. It is therefore manifest that no element of voluntary dedication, estoppel, easement, or user in common with the public of all the artificial waters was involved in the cases cited. The other cases cited involve exclusive rights of fishery in certain lands under specific grants from the state, and are therefore not in point. In the instant case appellant voluntarily impounded and enlarged the existing waters in a navigable stream riparian to its lands so as to inundate them, thereby permitting the fish from the stream to enter the entire waters of the artificial lake, and we hold that the public right of fishery will be correspondingly extended so long as such artificial condition exists; and that this right is one arising from the voluntary conduct of appellant or its predecessors in title, and finds its basis in some sort of principle of dedication, estoppel, easement, or user in common of the enlarged waters of the navigable stream.

We do not sustain appellant's third proposition that the court erred in submitting the question of navigability of the entire river to the jury, because the undisputed evidence showed that it was not navigable at the point riparian to appellant's lands. The jury found that the river "retains an average width of thirty feet from its mouth up" to a point above the lands and waters in question. The proof of navigability followed the rule or test announced in the cases of Motl v. Boyd, supra, and Oklahoma v. Texas, 260 U. S. 606, 43 S. Ct. 221, 67 L. Ed. 428; State v. Bradford (Tex. Civ. App.) 25 S.W.(2d) 706; King v. Schaff (Tex. Civ. App.) 204 S. W. 1039, and sufficiently supports the jury's finding.

Nor do we sustain appellant's fourth proposition that the court erred in

572

excluding from the evidence a deed from San Antonio Trust Company to Diversion Lake Club, purporting to convey the title to the middle of the stream and including the river bed at the point in question. The title to the bed of the stream was in the state and no effort was made to show that appellant's grantor or grantors, or predecessors in title, ever obtained a grant extending to the middle of the stream from the state, and nothing short of a specific grant from the state under legislative authority would suffice to convey the state's title to the bed of the stream in question. State v. Black Bros., supra.

Nor do we sustain the cross-assignment of appellees that the court erred in restraining them from using the banks of the lake and river in the exercise of their right of fishery in the waters of the lake. The court found and appellees admit in their briefs that they have a reasonable way of entering the waters of the lake by the public road and bridge; and there is no evidence showing that appellees could not fully and reasonably exercise their right of fishery in this manner without going on the banks of the river. Appellees were not entitled to use the banks of the lake for fishing where the fast lands or banks were the private property of appellant; and they offered no evidence describing the proper banks of the river at points not covered by the lake waters; and for that reason it was impossible for the court to grant the relief prayed for.

We affirm the judgment of the trial court.