## ROBERSON et al. v. RED BLUFF WATER POWER CONTROL DIST.

### No. 3949.

Court of Civil Appeals of Texas. El Paso.

June 6, 1940.

R. T. Meador, of Dallas (A. T. Folsom, of Wink, of counsel), for plaintiff in error.

Burges, Burges & Scott, of El Paso (J. F. Hulse, of El Paso, on the brief), for defendants in error.

WALTHALL, Justice.

This case presents an appeal from a judgment rendered and an order entered therein in the District Court of Reeves County, Texas, on the petition of defendant in error.

The order and judgment of the court from which this appeal is prosecuted is as follows: "It is therefore ordered, adjudged and decreed that the defendants Ronald Roberson and E. L. Stratton be, and they are hereby, perpetually enjoined from, and that they shall desist from interfering with, or using force, threats of force, or violence on the officers, agents and employees, of plaintiff Red Bluff Water Power Control District constructing and building fences, roadways, levees, and other improvements upon its properties; and that the defendant Ronald Roberson be, and he is hereby, perpetually enjoined from, and that he shall desist, using the properties of plaintiff Red Bluff Water Power Control District for the purpose or purposes of conducting a business thereon, operating boats and renting boats, fishing tackle and other equipment upon the properties of plaintiff Red Bluff Water Power Control District; that plaintiff do have and recover of the defendant Ronald Roberson the sum of One Dollar ($1.00) actual damage; and that plaintiff have judgment and recover of the defendants Ronald Roberson and E. L. Stratton all cost of suit; for all of which let writs of injunction and execution issue."

The case was tried to the court without a jury.

At defendants' request the court made and filed findings of fact and conclusions of law.

The findings of fact made by the court are comprehensive, and sufficiently embrace

all the fact issues pleaded by all the parties. The findings of fact are as follows:

"1. That plaintiff is a water power control district and water improvement district duly organized, incorporated and existing under and by virtue of Section 59 of Article XVI of the Constitution [Vernon's Ann.St.] and Chapter 2, Title 128 of the Revised Civil Statutes, 1925, and amendments thereto, of the State of Texas [Vernon's Ann.St. art. 7622 et seq.].

"2. That plaintiff has a valid and subsisting permit from the State Board of Water Engineers of the State of Texas for the appropriation of flood waters of the Pecos River.

"3. That plaintiff completed in September, 1936, the construction of a large earthern dam across the Pecos River, approximately ten miles below the Texas, New Mexico boundry line thereby creating an artificial lake and body of water of 300,000 acre feet at said reservoir, at an expenditure of approximately $2,885,000.00. That said water is used to irrigate approximately 35,000 acres of land lying below said dam and for hydro-electric power. That the amount of water in said reservoir varies from day to day and month to month, according to the use of same for irrigation and hydro-electric power purposes.

"4. That plaintiff owns and possesses about 14,000 acres of land for said reservoir site in Texas, same being the land covered by the waters of said artificial reservoir and a strip of land above the highest elevation of the flood-spillway gates.

"5. That in Section 16, Block 57, Township One, Texas & Pacific Ry. Co. Survey in Reeves County, Texas, plaintiff owns 448.1 acres of land as part of said artificial lake and reservoir site on the East side of said section. Plaintiff's land in Section 16 is land inclosed partly by fence and partly by water of the reservoir.

"6. That the remainder of said section is owned by Mrs. Cecilia M. Stratton Bell, from whom the defendant E. L. Stratton holds a power of attorney, and that the defendant Ronald Roberson has an undivided interest in a leasehold estate for 10 years from October 11, 1938, to one acre of said land which said acre for a distance of 80 feet adjoins plaintiff District's land in said section.

"7. That plaintiff purchased said 448.1 acres from Mrs. Cecilia M. Stratton Bell and her husband, Donald S. Bell, and the Black Reef Oil Company, a corporation, acting by and through its President, E. L. Stratton, for a cash consideration of $13,-472.65 paid for said 448.1 acres of land and other lands.

"8. That plaintiff holds title under a warranty deed from Mrs. Cecilia M. Stratton Bell and her husband, Donald S. Bell, and the Black Reef Oil Company, a corporation, acting by and through its President, E. L. Stratton, to the fee simple estate to said 448.1 acres of land in said Section 16, Block 57, Township One, and no reservations, easements or profit a prendre were excepted or reserved in said conveyance.

"9. That said Section 16, at the time of the entry thereupon and application for purchase from the State of Texas, at the time plaintiff's portion was patented, nor at any time between, ever abutted upon the Pecos River or other water course, nor did any stream or water course run by or through said Section 16. That said Pecos River at all times above specified ran in a Southeasterly direction through Section 15, same block and survey, which said Section 15 lies directly East of Section 16. Each of said sections is one mile square and contains 640 acres.

"10. That at all times since June, 1937, flood waters impounded in said reservoir have flowed over and inundated and now inundate portions of the eastern part of said Section 16 owned by plaintiff.

"11. That the Board of Directors of plaintiff district adopted, at a regular meeting on 19th of July, 1938, a resolution and order as follows, to-wit:

"'Be it resolved by the Board of Directors of Red Bluff Water Power Control District that the following rules and regulations apply to the regulations of residence, boating and camping and all recreational and business privileges at and upon Red Bluff Reservoir and that the land owned and controlled by this District adjoining, surrounding and adjacent to said reservoir are adopted and promulgated as reasonable rules and regulations deemed necessary for preserving the sanitary condition of the waters of said Reservoir controlled by the District and to prevent waste of water and to prevent the un-

authorized use of said property and to safeguard the welfare and health of all persons using said properties and going upon same, and to safeguard the interest and responsibility of this District as the owner of said property, and to safeguard and maintain order and prevention of disturbances thereon, and to safeguard and maintain said property belonging to this District and the duty imposed upon this District by law to police and condition and preserve the waters of said Reservoir in accordance with the provisions of an act of the Legislature of the State of Texas, 47th Legislature, 2nd Called Session, Acts 1935, Chapt. 293.

" 'The said properties of the District including specifically all land owned by the District surrounding said Reservoir are hereby declared to be restricted to the use of said District and that no one shall have the right to go upon, over, across or in any way use said property except the officers and employees of said District acting in their official capacity and such other persons as may be issued permits therefor in accordance with the rules and regulations adopted with reference thereto.

" 'The General Manager of the District is vested with the duty and responsibility to control, police, care for and maintain said property in a sanitary, healthful, orderly and proper condition and to make and enforce all rules and regulations pertaining thereto and enforce same and to select, appoint and employ such assistants as may be required from time to time in the full performance of such duties vested in him by this Board and all duties pertaining to the policing and care of said property and maintaining possession thereof for the District and all other functions necessary to the care and maintenance of said property not specifically set out in rules and regulations are vested in said General Manager until otherwise ordered by the Board of Directors.

" 'All residence and camping privileges on said properties shall be confined to those particular places thereon for which leases and permits shall be issued therefor. All lots leased for use as residence or campsites shall be limited in their use to the party to whom same is leased and his immediate family including his wife and minor children. Any other party using such leased property or camp site shall pay charges established by the District or or the General Manager for use of such property and recreation and resort features. Any person who shall have leased or secured a permit for the use of any lot or campsite shall be responsible to the District for any charges due by others using said property.

" 'The rule heretofore established for the leasing of campsites, except as modified herein, shall remain in effect until changed by the District.

" 'No person shall be allowed to go over said property, pass over, use or remain upon same unless he shall have first secured a permit therefor, either as the lessee of a campsite or shall have paid for and secured a season permit or a daily permit and has paid for same.

" 'No business or license of any character or nature pertaining to the operation of a business shall be carried on or permitted upon the said property of the District until the party thereto shall have entered into a proper contract with the District therefor.

" 'No business or concession of any character shall be permitted upon said property except in certain defined areas within 1500 feet of the District's office building located near the Dam on said property and the District shall at all times have said area properly policed to safeguard any one entering upon said area and to maintain order therein and to safeguard and maintain proper sanitary rules and regulations therein.

" 'The General Manager shall prepare and enforce proper rules and regulations pertaining to the use of boats and boat equipment and power boats on said reservoir and shall enforce same subject only to the orders of the Board of Directors. After the making of such rules and regulations pertaining to the use of boats on said Reservoir the General Manager shall submit same for approval to the next regular meeting of the Board of Directors but same shall remain in full force and effect until and unless changed by order of the Board of Directors.

" 'All persons going upon, over, on and in anywise using the property of the District herein defined being on lands owned by the District around, adjoining and adjacent to said Reservoir and within one-half mile of said Reservoir, insofar as owned by the District shall secure a permit therefor and be subject to all rules and regulations pertaining thereto adopt-

ed by the General Manager or adopted by the Board of Directors. The fees to be charged for such permits other than those pertaining to lessee of a campsite and to holders of a season permit shall be $1.00 per day of 24 hours and such permit issued to a married man shall include his wife and minor children and such permit issued to a single man shall include himself and a lady guest if actually accompanied by such lady. Boats rented by the District shall be rented for a charge of $1.00 per day, and minnows and other things and facilities furnished by the District shall be charged for at such fees as may be fixed from time to time by the General Manager.

" 'All income from such fees and charges shall be applied insofar as required to the expense of providing such services and of maintaining sanitary conditions preventing waste of water, preventing a polution of water, policing and preserving the property of the District and maintaining order thereon and providing drinking water, hotel accomodations, roads, recreational facilities and in all respects developing, maintaining, policing and controlling said area and said Reservoir and its waters for the use of said District and the reasonable and proper use of said area as a recreational ground for the benefit of all persons who may properly use same under the rules and regulations pertaining thereto and any balance remaining in said fund shall be used to maintain the Dam forming said Reservoir and the properties of the District pertaining thereto and necessary to the maintenance of said Reservoir and to provide recreational facilities for the use of those having permits to use same and any and all persons shall have the right to so use same upon the payment of such fees necessary to the creation and maintenance of same and the maintenance, policing and use of same as such recreational grounds as provided for and under the authority of all laws pertaining to the ownership and use of property and the laws of the State of Texas vesting such responsibility and control of said Reservoir and property in said District as the owner of said lands and as the agent in control of said Reservoir.'

" 'The General Manager shall compile and have printed rules and regulations applying to the use of said property and shall post copies thereof on said property

within the area herein designated for business purposes.'

"That notice by publication as required by Chapter 293 of Acts of 1935, 44th Legislature [Vernon's Ann.Civ.St. art. 7652a] was duly given of the substantial substance of said resolution as required by law.

"13. That plaintiff makes a charge of $10.00 for an annual permit, or $1.00 for a daily permit. That said permits are in words, as follows:

" 'No. 2750 *Receipt for Recreational Privileges* This Park and Reservoir is owned by Red Bluff Water Power Control District. Cost of Reservoir lands $88,000.00. Construction of Reservoir about $2,300,000.00. Total Projects cost $2,884,000.00. Maintenance of Reservoir $10,000.00 per annum. Daily interest charge $260.00, monthly $7,200.00. There would be no park or recreation facilities here except for the construction and maintenance of this property.

" 'This debt is paid by the farmers of the District and if they furnish you a playground, you should gladly pay the small amount charged to help in a small way to carry the cost.

" '————.M. ———— day of ————, 1938.

" 'Received of ————, Post Office ————

" 'Auto No. ————

" '1.  Daily Ticket $————

" '2.  Boat Rental   ————

" '3.  Minnows      ————

" '4.  Swimming     ————

" '5.  ————————,

" 'Total        $————

" '————————.'

"Resident taxpaying property owners who have rendered $1000 or more property for taxation to plaintiff district are allowed the recreational privileges of the property and reservoir as taxpayers in said district. Defendant E. L. Stratton is a resident taxpaying property owner who has rendered $1000 or more property for taxation to plaintiff. That holders of said permits and said property owners use the recreational privileges of plaintiff's property and reservoir for camping, picnicking, swimming, boating, fishing and as a general playground.

"14. Defendant Ronald Roberson repeatedly trespassed on and over property of plaintiff and was carrying on a business of renting boats, fishing tackle, motors

and other equipment on property of plaintiff in said Section 16, and on said reservoir, between August, 1938 and November 5, 1938, without any contract, consent or permission of plaintiff and contrary to said plaintiff's rules and regulations, above set out.

"15. That on or about the 19th day of October, 1938, defendant Ronald Roberson by use of threats caused employees of plaintiff to leave unfenced portions of plaintiff's property in said Section 16, which said fence was being constructed entirely on property owned by plaintiff.

"16. That on or about the 25th day of October, 1938, defendant E. L. Stratton by use of threats caused employees of plaintiff to leave unfinished a roadway and levee being constructed by plaintiff on property owned by it, in said Section 16, and at said time the said defendant Roberson was present with said defendant Stratton.

"17. That said Section 16 lies in the watershed of the Pecos River and a portion of said Section 16 owned by plaintiff has at all times since said lake was filled been submerged by the waters thereof.

"18. That defendant Ronald Roberson applied to an employee of plaintiff for an annual permit for recreational purposes, and was advised to see the General Manager therefor. Said defendant did not make application to the General Manager for same.

"19. That the Pecos River in Texas has been (by stipulation of counsel) since 1890 a navigable stream as defined by law.

"20. That plaintiff has had possession and control of its properties and reservoir at all times since acquiring same in 1934.

"21. That after the issuance of the temporary injunction against defendants on November 5, 1938, plaintiff erected its fence and roadway and levee on said Section 16.

"22. I find, by stipulation of counsel it was agreed, said Section 16 at the time same was granted by the sovereignty, did not abut upon the Pecos River nor did any stream or water course run by or through said section. That certified copies of early field notes of said section 16 indicated that in 1877 that the calls for courses and distances of Section 16 indicated a crossing of the banks of the Pecos River. That entry upon said section and application for purchases from the state as public school land was made in 1913 and patent was issue to plaintiff's portion thereof in 1934. That said patent was issued on field notes determined under the entry of 1913 and not upon the survey made in 1877.

"23. I find that on June 17, 1937, the Board of Directors of plaintiff passed the following resolution:

"'Camp sites will be laid off approximately 150' x 150', these to be rented for cash payment of $25.00 and $2.50 per month for a term of 10 years, giving lessee first option on renewal of lease.

"'The party renting a camp shall have the privilege of using the facilities of the Lake for boating, bathing, fishing and other recreations, provided if he uses facilities for concessions or facilities provided by the District he will pay the charges established for same.

"'The privilege attaching to the rented premises are limited to the lessee and his immediate family, who will be named in the lease. Any other party using such camp shall pay charges established by the District or in its authority for use of recreation and resort features.

"'The General Manager is authorized to lease grounds for concessions on the following basis:

"'All concessions shall pay to the District as rental 10% of the gross income of the business, such payments to be made on Monday of each week for the prior week ending each Saturday night at 12 o'clock. The District shall have the right at all times to inspect the premises, investigate and check the gross income of such business.'

"24. I find that plaintiff District through its employees demanded the charge for recreational permit from persons found using the recreational facilities of plaintiff District who were not entitled to same, under the rules and regulations of plaintiff.

"25. I find that the defendant Ronald Roberson did and performed such acts as found in paragraph 14 of the original findings of fact under a claim of riparian or littoral rights as an owner of an undivided one-half interest in a leasehold estate to one acre from October 11, 1938.

"26. I further find in connection with paragraph number 15 of the original findings of fact, that plaintiff was constructing said fence within its own property line and in a manner to prevent defendant Ronald Roberson from doing the acts complained of in paragraph 14 of the original findings of fact and to prevent said Roberson passing over plaintiff's land as access to the water of the lake where he had been watering a team of mules and securing water for domestic purposes for a period of approximately two months.

"27. I further find that the roadway and levee being constructed by plaintiff (original findings, paragraph 16) would prevent waters of the lake from hereafter flooding or reaching lands in Section 16 not owned by plaintiff.

"28. I find that all Section 16 lies in the watershed of the Pecos River.

"29. I further find that the plaintiff's agents issue permits to other persons without the applicants being required to make application to the General Manager for same; that agents and employees of plaintiff District were instructed to refer the defendant Ronald Roberson to the General Manager; that defendant Ronald Roberson was an employee and agent of the plaintiff District in May, 1938; that said employment was terminated on or about the 28th day of May, 1938; that immediately thereafter said defendant began pursuing the business of renting of boats, motors and other equipment upon said land; and, that said defendant did not make application for any permit until August or September, 1938.

"30. I find that after the issuance of the temporary injunction plaintiff completed its fence in Section 16 and left no opening or gates for the benefit of the defendants."

The court stated several conclusions of law to the effect that Section 16 has no riparian or littoral rights in law; that Roberson and Stratton had no right to go upon the property of the Water Company without permission; that the Company had the right to fence its property on Section 16 and erect all improvements incident thereto and to adopt and promulgate reasonable rules in control of its properties; that defendants had committed the troubles complained of and should be restrained, and so granted the injunction.

There is no statement of facts. The record filed here consists of the transcript only.

In the opinion we will designate plaintiffs in error as plaintiffs, and defendant in error as defendant.

In the absence from the record of a statement of facts or question raised and presented as to the sufficiency of the pleading or evidence or both to sustain the trial court's findings of fact, or any of the findings, this court is necessarily bound by the facts found by the trial court. For the purposes of judgment and review the findings of fact and conclusions of law have the force and effect of a jury verdict, and must be accepted as true in fact, unless excepted to and assigned as erroneous and shown by the record to be untrue. Williams v. Planters' & Mechanics' Nat. Bank, 91 Tex. 651, 45 S.W. 690; 41 Tex.Jur. p. 1274, par. 399, and cases in note 11.

We overrule plaintiffs' assignment of error to the effect that the court erred in overruling their general demurrer.

This suit was filed on October 31, 1938, by the defendant as a Water Power Control and Water Improvement District incorporated under and existing by virtue of the laws of the State of Texas, and particularly by Article 16, Section 59 of the Constitution of Texas, Chapter 2, Title 128, Revised Civil Statutes of Texas, 1925, and amendments thereto, as pleaded by defendant, and as found by the court. Defendant also has a valid and subsisting permit from the State Board of Water Engineers of this State for the appropriation of the flood waters of the Pecos River, and embracing the rules and regulations of the Board as authorized to adopt and promulgate under subdivision 1 of Art. 7652a, Vernon's Ann.Civ.St.

We have stated above the various matters and things possessed, done and owned by defendant Water District embracing its 14,000 acres of land for its reservoir site, and the other matters alleged and found by the court, but which for brevity we omit restating here. The Board enjoined upon the defendant certain duties in the matter of the control of its properties, to which we refer without quoting, such duties being statutory.

Plaintiffs claim the right and privilege to go upon defendant's property without

permission and exercise the same rights and privileges as granted defendant Water District by reason of their land being riparian to the Pecos River, and by reason of an alleged reservation in the grantors of a portion of said Section 16, upon a portion of which the reservoir is built. The court found the facts against plaintiffs on each of said contentions.

Defendant in its amended original petition alleged its ownership of the properties here involved, including all the land adjacent and contiguous to the Pecos River in Reeves and Loving Counties, Texas, from the dam to the New Mexico state line, below the elevation of 2846 feet; it alleged the adoption by its Board of Directors of the rules and regulations concerning residents, boating and camping, and all recreational and business privileges at the reservoir, and its land around its reservoir; it alleged the repeated trespasses of plaintiff Roberson upon defendant's property conducting thereon a boating and fishing business, which, as alleged, causes irreparable damage to defendant, and that Roberson has threatened to use violence towards defendant's officers and agents to prevent its erection of a fence it is erecting upon its property, thereby causing irreparable injury to defendant; similar allegations are made with reference to defendant's construction of a roadway, levee and other improvements upon its property, and that in all of the acts of Roberson complained of, plaintiffs Stratton and Roberson acted jointly and severally, and defendant pleaded that unless plaintiffs are restrained they will continue in their actions complained of, and for which it has no adequate remedy at law, and prays for damages and injunction.

■ We have concluded that the petition is good as against the general demurrer, and that under the facts pleaded and found by the court defendant was entitled to the injunction granted. 4 Pomeroy's Equity Jurisprudence, Sec.1357, 4th Ed.; Kibbin v. McFaddin, Tex.Civ.App., 259 S.W. 232; Heath v. Diversion Lake Club, Tex.Civ.App., 33 S.W.2d 479.

■ Defendant's allegation of an unqualified ownership of its properties is a denial of any rights of plaintiffs to the properties, riparian or otherwise. If plaintiffs' lands were riparian to the Pecos River, and had rights by reason thereof, or had rights by reason of reservations or otherwise, such rights we think were defensive matters and rested with plaintiffs. Plaintiffs pleaded them, and the court found against plaintiffs on the facts. In the condition of the record presented here, the defensive matters pleaded of riparian rights and the reservation of Mrs. Bell in conveying a part of Section 16 to defendant go out of the case.

In June, 1926, in the case of Motl v. Boyd et al., 116 Tex. 82, 286 S.W. 458, Judge Cureton, for the Supreme Court of this State, wrote an opinion in which he reviewed in detail the various rights of riparian owners of lands to the use of the waters of the streams in the State both for domestic use and for irrigation purposes. We can refer only briefly to some portions of the opinion which, in our opinion, state the extent of the right of a riparian owner of lands to the use of the waters on the Pecos River.

It is held in the opinion that the irrigation rights of riparian owners of lands are limited to the ordinary and normal flow of the waters, and do not extend to their flood waters. The opinion clearly defines each of the expressions "ordinary and normal flow" and "flood waters."

Defendant's petition on which it went to trial alleges that it impounded the "flood waters of said Pecos River to be held and distributed by said district for irrigation and hydro-electric power purposes, all as authorized by the Constitution and laws of the State of Texas," and the court found that the waters impounded by defendant in its reservoir are "flood waters."

We have considered the other assignments and propositions presented by plaintiffs not discussed, and have concluded they present no error. They are each overruled.

The case is affirmed.